IN THE INTEREST OF "R" CHILDREN: S.K.R.(1), S.K.R.(2), and K.K.R. (FC-S No. 04-09563) and
IN THE INTEREST OF K.R. (FC-S No. 05-10708).
Nos. 29011, 29012
Intermediate Court of Appeals of Hawaii.
March 5, 2009
On the briefs:
Randal I. Shintani, for Mother-Appellant.
Dean T. Nagamine, for Father-Appellant.
Kurt J. Shimamoto, Mary Ann Magnier, Deputy Attorneys General, for Petitioner-Appellee, Cross-Appellee Department of Human Services.

SUMMARY DISPOSITION ORDER
WATANABE, Presiding Judge, FOLEY and NAKAMURA, JJ.)
This is a consolidated appeal[1] from two cases (FC-S No. 04-09563 and FC-S No. 05-10708) before the Family Court of the First Circuit (family court) involving the same Mother and Father. FC-S No. 04-09563 involves three children: S.K.R.(1), S.K.R.(2), and K.K.R. (collectively, the three children), and FC-S No. 05-10708 involves one child: K.R. (hereafter, S.K.R.(1), S.K.R.(2), K.K.R., and K.R. are collectively referred to as Children).
On March 9, 2004, the Department of Human Services (DHS) filed a Petition for Foster Custody of the three children as a result of Mother's testing positive for and admitting that she used crystal methamphetamine (meth) and marijuana. Mother and Father acknowledged the threatened harm to the three children and agreed to participate in services. The family court granted the petition.
During the first year after the filing of the petition Father met once on January 24, 2005 with the DHS social worker (Social Worker) assigned to the family's case, but after that, Father did not appear for several hearings and did not participate in services.
At one point during the pendency of this case, Mother had made substantial progress in services and was reunited with the three children. However, the reunification was followed by Mother failing to appear for three drug tests and admitting to drug use.
On May 5, 2005, Mother gave birth to K.R. DHS filed a Petition for Family Supervision over K.R. on December 27, 2005. On February 23, 2006, DHS assumed foster custody of K.R., and on March 6, 2006, DHS filed a Motion for Immediate Review. The order granting the motion for immediate review and confirming foster custody was filed on March 9, 2006.
On November 27, 2 006, DHS reported that, as a result of another relapse into drug use by Mother and Father's failure to demonstrate his ability to protect Children and provide a safe family home for them, the direction of the case was changed to termination of parental rights. On May 3, 2007, DHS filed Motions for Order Awarding Permanent Custody and Establishing a Permanent Plan in FC-S Nos. 04-09563 and 05-10708  over three years after the filing of the initial petition in FC-S No. 04-09563 and only after the Volunteer Guardian Ad Litem (VGAL) for Children had filed Motions for Order Requiring [DHS] to File a Motion for Permanent Custody and for Other Relief in each case.
During the three-year period after the initial petition, Mother had approximately 9 9 scheduled urinalysis drug tests; she either failed to appear or tested positive for 46 of them. Father was asked to attend nearly 50 drug tests, and he failed to appear for 25 to 3 0 of them. Father completed parenting class, but failed to participate in domestic violence classes.
In August 2007, the family court held a consolidated trial.[2] On October 22, 2007, the family court set the case for a new trial. The second trial was held on January 17, 2008.[3]
On October 21, 2007, Mother gave birth to her fifth child. That child tested positive for meth, and Mother acknowledged to hospital personnel that she had used meth three days before giving birth. DHS re-referred Mother to Hina Mauka for substance abuse assessment, but Hina Mauka was unable to contact Mother. The Social Worker testified that Mother showed up at Hina Mauka in mid-December 2007, Hina Mauka recommended residential treatment, and Mother declined. At a January 7, 2008 hearing, the family court ordered Mother to attend a one-time urinalysis drug test, but Mother failed to appear for the test.
By the time of the second trial, Mother and Father were separated. Mother was temporarily living with a friend, and Father was living with his mother.
Although the two cases were consolidated for trial purposes, the family court entered separate orders and findings of fact for each case. On January 24, 2008, the family court entered the Order Granting Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan Filed May 3, 2007 in each case. Mother and Father each timely appealed. On April 3, 2008, the family court entered its Findings of Fact and Conclusions of Law in each case.
On appeal, Mother contends:
(1) The family court erred by ordering a new trial rather then denying or dismissing the motion for award of permanent custody.
(2) In FC-S No. 04-09563, the family court's Findings of Fact (FOFs) 41, 77, and 7 8 were erroneous; in FC-S No. 05-10708, the family court's FOFs 37 and 72 were erroneous; and the family court's Conclusion of Law (COL) 6 in both cases was wrong. The family court found and concluded that Mother was not presently willing and able, or will not become able within a reasonable period of time, to provide a safe family home even with the assistance of a service plan.
(3) In FC-S No, 04-09563, the family court's FOF 78 was erroneous; in FC-S No. 05-10708, the family court's FOF 73 was erroneous; and the family court's COL 8 in both cases was wrong. The family court found and concluded that it was not reasonably foreseeable that Mother would become willing and able to provide a safe family home even with the assistance of a service plan within a reasonable period of time not to exceed two years from the date upon which Children were first placed in foster custody by the court.
(4) The family court's COL 9, in which the court concluded that the permanent plan dated September 21, 2007 was in the best interest of Children, was wrong.
On appeal, Father contends the family court erred in finding that Father was not presently willing and able to provide a safe family home even with the assistance of a service plan and that he would not become willing and able to provide a safe family home even with the assistance of a service plan within a reasonable period of time not to exceed two years from the date upon which Children were first placed in foster custody by the court. Father argues that the family court's FOFs 14, 18, 41, 67, 81, 82, 83, 88, 90, 92, 95, 96, 97, 98, 99, 112, 113, 115, and 117 in FC-S No. 04-09563 were erroneous and the court's FOFs 7, 13, 62, 76, 77, 83, 85, 87, 90, 91, 92, 93, 94, 104, 106, 108, and 114 in FC-S No. 05-10708 were erroneous. He further argues that the family court's COLs 7, 8, and 9 were wrong in both cases.
The standard of review applicable to the issue of whether Mother or Father is presently willing and able or will become in a reasonable period of time willing and able to provide a safe family home for Children is the clearly erroneous standard of review. In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001); see also In re Doe, 103 Hawai'i 130, 135, 80 P.3d 20, 25 (App. 2 003). The same standard applies to the family court's review of reports and exhibits. "[T]he family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." In re Doe, 95 Hawai'i at 190, 20 P. 3d at 623 (internal quotation marks, citation, and brackets omitted).
The determination of witness credibility is left to the family court. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." Id. (internal quotation marks, citation, brackets, and ellipsis omitted).
Father's initial noncompliance with the service plan, his failure to complete random urinalysis testing, his failure to complete domestic violence classes, and his failure to demonstrate an ability to care for Children, and Mother's failure to complete substance abuse treatment and her continued use of drugs constitute substantial evidence supporting the determination of the family court.
A poor history of compliance with a service plan supports a conclusion that the parent is not able to provide a safe family home and will not improve with the assistance of a service plan. In In re Doe, 95 Hawai'i at 197, 20 P. 3d at 630, the Hawai'i Supreme Court held that
Mother's vacillating compliance with service plans relating to Jane, as well as her history of poor compliance with the service plans ordered in family court proceedings regarding her other children, amply supported the family court's conclusion that her inability to provide a safe family home for Jane would not improve with the assistance of a service plan.
Based on our careful review of the record on appeal, in light of the applicable standards of review, and having duly considered the issues and arguments raised by Mother and Father, as well as the statutory and case law relevant to these issues, we conclude that there is substantial evidence in the record to support the family court's award of custody of Mother and Father's four Children to DHS, the family court's findings of fact were not erroneous, and the court's conclusions of law were not wrong.
Therefore,
We affirm the "Order Granting Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan Filed May 3, 2 0 07" entered on January 24, 2008 in FC-S No. 04-09563 and in FC-S No. 05-10708.
NOTES
[1] The order consolidating appeals Nos. 29011 and 29012 was filed on May 29, 2008 and consolidated the two appeals under No. 29011.
[2] The Honorable Linda K.C. Luke presided.
[3] The Honorable William J. Nagle III presided.